422 So.2d 1312 (1982)
BETHEL APARTMENTS, INC., Plaintiff-Appellant,
v.
Rev. G.W. TYLER, Defendant-Appellee.
No. 82-166.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
Rehearing Denied December 28, 1982.
*1313 Steven Young, Alexandria, for plaintiff-appellant.
Broussard, Bolton & Halcomb, Daniel E. Broussard, Alexandria, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
GUIDRY, Judge.
This possessory action was consolidated on appeal with three other cases: Bethel Apartments, Inc. v. Rev. G.R. Haughton, 422 So.2d 1319 (La.App. 3rd Cir.1982), our docket number 82-266; Reverend G.W. Tyler v. Reverend G.R. Haughton, 422 So.2d 1319 (La.App. 3rd Cir.1982), our docket number 82-267; and Reverend G.W. Tyler v. Reverend G.R. Haughton, 422 So.2d 1320 (La.App. 3rd Cir.1982), our docket number 82-268. These latter three cases were also consolidated for trial in the district court. The law and relevant facts are common to all three suits, therefore our opinion herein is equally applicable to each, but we render separate judgments in the other three consolidated cases.
Bethel Apartments, Inc., through its alleged chairman of the Board of Directors, Reverend G.R. Haughton, brought this possessory action against Reverend G.W. Tyler. In conjunction with this suit, injunctive relief was sought to prohibit Reverend Tyler from interfering with the affairs of the corporation. The trial court issued a temporary restraining order. Reverend Tyler filed a motion to dissolve the temporary restraining order in which he asserted that he and not Reverend Haughton was chairman of the Board of Directors of the corporation. The motion for a preliminary injunction and the motion to dissolve the temporary *1314 restraining order were tried together in a rule to show cause hearing. On the third day of hearing, Reverend Tyler filed a dilatory exception of lack of procedural capacity. On November 30, 1981, the trial court signed a judgment dissolving the temporary restraining order, denying the preliminary injunction, and dismissing this suit. Notice of the signing of the judgment was mailed to all parties that same day. Bethel Apartments, Inc., through its alleged chairman of the board, Reverend G.R. Haughton, on January 19, 1982, appealed devolutively.
Subsequent to the trial and dismissal of this suit, Bethel Apartments, Inc., through its alleged chairman of the Board of Directors, Reverend Tyler, filed a suit (which bears our docket number 82-266) for the issuance of a writ of injunction against Reverend Haughton seeking to enjoin his interference with the affairs of Bethel. Also, Reverend Tyler, in his individual capacity, brought two suits (which bear our docket numbers 82-267 and 82-268) for the issuance of writs of quo warranto and mandamus against Reverend Haughton. Specifically, Reverend Tyler seeks by these several suits to have determined the proper official to hold the office of chairman of the Board of Directors of Bethel; to get the corporate records; and, to enjoin Reverend Haughton from interfering with the operation of the corporation. These three suits were consolidated for hearing in the trial court and the entire record of the first suit was introduced into evidence at the hearing of these consolidated matters. Additional evidence was adduced to show that Reverend Haughton was still holding the records of Bethel and was still interfering with the affairs of the corporation and holding himself out as president and chairman of the Board of Directors.
The trial court rendered judgments in these three suits granting the writs of quo warranto, mandamus and injunction. Reverend Haughton was granted suspensive appeals from the judgments granting writs of mandamus and quo warranto and a devolutive appeal from the judgment granting the preliminary injunction.

FACTS
These are the pertinent facts leading up to the dispute, which is the basis of all four suits. Reverend Haughton is the former pastor of Bethel African Methodist Episcopal Church in Alexandria, Louisiana (hereafter referred to as the Church). In 1969, during Reverend Haughton's tenure as pastor, the Church purchased the land where the Bethel apartments are now located. On June 17, 1969, Bethel Apartments, Inc. (hereafter referred to as Bethel) was formed and its articles of incorporation adopted and filed. On July 8, 1969, the property was transferred from the Church to Bethel. Bethel obtained a loan from First Fidelity Mortgage Company of Monroe, Louisiana, to build the apartment complex. At the time the apartment complex was completed, Reverend Haughton was the president and chairman of the Board of Trustees of the Church and of the Board of Directors of Bethel. To this date, Reverend Haughton continues to assert title to the office of president and Chairman of the Board of Directors of Bethel, although he admits that on October 1, 1981, he ceased to be a member of the Board of Trustees of the Church when he resigned and retired from his position as pastor of the Church.
On November 15, 1980, Reverend G.W. Tyler was appointed to the position of Pastor of the Church. On January 18, 1981, Reverend Tyler held an election for a new Board of Trustees of the Church. Nineteen members were elected[1] and Reverend Tyler assumed the position of chairman and ex-officio member of the Church board as provided by the church rules.
On February 18, 1981, Reverend Haughton called a meeting. The purpose of the meeting as reflected in the minutes was to elect officers of the Board of Directors of Bethel. The minutes of that meeting do not reflect who was present, however, the record indicates that the meeting was attended *1315 by the then Board of Directors of Bethel. The officers, including Reverend Haughton, were unanimously re-elected.
On February 25, 1981, following verbal notice, and at a meeting attended by a majority of the then members of the Board of Trustees of the Church, Reverend Tyler held an election for directors of Bethel. At this meeting, eight members of the Board of Trustees of the Church were elected as directors of Bethel. Reverend Tyler was elected chairman and president of the Board. This Board subsequently met to elect the other officers.
All of these suits arise from the competition for control of Bethel and its property between the two groups, one consisting of the officers and Board of Directors attending Reverend Haughton's meeting of February 18, 1981, and the other consisting of the Board of Directors elected at Reverend Tyler's meeting of February 25, 1981.
First, as to the possessory action filed on behalf of Bethel, we observe that under LSA-C.C.P. Art. 3612, an order dissolving a temporary restraining order is not appealable. Under the same article, an appeal from an order or judgment relating to a preliminary injunction must be taken within 15 days from the date of the order or judgment. Here the appeal from the judgment rejecting the demand for issuance of a preliminary injunction was untimely where the judgment was signed on November 30, 1981, and the motion for appeal was not filed until January 19, 1982. We therefore, on our own motion, dismiss this appeal insofar as it relates to the trial court's dissolution of the temporary restraining order and its judgment rejecting Bethel's demand for a preliminary injunction.
The only issue remaining insofar as this suit is concerned is whether Bethel's demand should have been dismissed on the exception of lack of procedural capacity.
Bethel argues that a dilatory exception of lack of procedural capacity filed after a motion to dissolve a temporary restraining order and during trial of the rules is untimely and thereby waived.
Bethel brought a possessory action and requested ancillary injunctive relief pursuant to C.C.P. Art. 3663. Reverend Tyler never filed an answer to the possessory action. Reverend Tyler, instead, raised the question of lack of capacity of Reverend Haughton to file a possessory action on behalf of Bethel. This exception was filed during the rule to show cause hearing (which concerned only the ancillary injunctive relief) before the delays for answering had run. The petition was filed August 24, 1981. The exception was filed on September 4, 1981. The fact that the exception was filed after a motion to dissolve a temporary restraining order or during the hearing on the ancillary injunctive relief is of no import. The exception was filed prior to answer or judgment by default and was therefore timely. LSA-C.C.P. Art. 928.
This possessory action was instituted on behalf of the plaintiff, Bethel Apartments, Inc., by Reverend G.R. Haughton. He appears in a purely representative capacity, alleging that he was the corporation's duly elected chairman of the Board of Directors. Reverend Tyler, in his exception, contends that he and not Reverend Haughton is the corporation's duly elected chairman of the Board and therefore, Reverend Haughton lacks the capacity to institute a possessory action on behalf of Bethel. He thereby raises the issue of whether Reverend Haughton or Reverend Tyler is the proper official to hold the office of chairman of the Board of Directors of Bethel. This is also the only issue on appeal in the remaining three suits.
The issue of the proper corporate control group is resolved by an analysis of Louisiana's non-profit corporation law and the articles of incorporation of Bethel. The applicable provisions of law are set forth below.
LSA-R.S. 12:224(C) provides:
"Each director shall hold office for the term for which he was named or elected, and until his successor is elected and qualified. Directors, other than those constituting the first board, shall be elected by the voting members, unless *1316 some other method is expressly provided in the articles and except as hereinafter provided in the case of vacancies."
LSA-R.S. 12:217(A) provides:
"Membership shall be of the classes, and shall be governed by the rules of admission, retention, suspension and expulsion, which the articles or by-laws prescribe; provided that all rules shall be reasonable, germane to the purpose of the corporation, and equally enforced as to all members of the same class."
LSA-R.S. 12:230(A) provides:
"Unless otherwise provided in the articles or by-laws, and except as otherwise provided in this Chapter, the authorized person or persons calling a members' meeting shall cause written notice of the time, place and purpose of the meeting to be given to all members entitled to vote at such meeting, at least ten days and not more than sixty days prior to the day fixed for the meeting. Notice of the annual meeting need not state the purpose thereof, except as otherwise provided in this Chapter if a specified action is to be taken at the meeting. If such written notice is placed in the United States mail, postage prepaid, and addressed to a member at his last known address, notice shall be deemed to have been given him. Notice of any meeting may be waived in writing by any member at any time; the written waiver need not specify the purpose of or the business to be transacted at the meeting; and such notice shall be deemed to have been given to, or waived by, all members present or represented at any such meeting except any member who, at the beginning of the meeting, objects to the transaction of any business because the meeting is not lawfully called or convened...."
The pertinent provisions of the Articles of Incorporation of Bethel are as follows:
Article VII(C) provides:
"C. Membership in the corporation shall, at all times, is (sic) limited to individuals who are either (1) trustees of Bethel African Methodist Episcopal Church Incorporated (formerly: Fountain Chapel African Methodist Episcopal Church Incorporated), or (2) members of Bethel African Methodist Episcopal Church Incorporated and who have the approval of the Board of Trustees of Bethel African Methodist Episcopal Church Incorporated. In the event that a member of the corporation ceases to be a member of Bethel African Methodist Episcopal Church Incorporated or, if the aforesaid approval is withdrawn, then, in either event, such shall constitute automatic resignation as a member and director (trustee) of the corporation."
Article VIII(A) & (B) provides:
"A. The number of directors (trustees) of the corporation shall be eight (8), and same shall be elected by the membership of the corporation from the membership. The directors (trustees) of the corporation must, at all times, be members of the corporation. No nonmember of the corporation may serve as a director.
B. The directors (trustees) shall be elected at the annual meeting of the members for a term of one year."
Article IX provides:
"A. At least one meeting shall be held of the voting members each calendar year. This meeting shall take place during the month of February of each year at a time and place to be designated by the directors in the Bylaws. It shall be the duty of the President, and upon his failure or neglect, then of the Secretary, or any officer or member to give notice at least ten (10) days prior to this annual meeting to all members entitled to be present.

B. Special meetings of the voting members may be called at anytime by the President or Board of Directors. On the failure or refusal of either to call a meeting, upon the written request of at least five (5) voting members, anyone of these voting members shall have the authority to call a meeting provided that notice by United States Mail shall be given to each voting member at least ten (10) days prior to the day named for any meeting called and this requirement of notice shall *1317 apply to either regular or special meetings.

C. Meetings may be held at any place within Rapides Parish, Louisiana.
D. No business transaction at a members meeting shall be valid unless a quorum is present. A quorum shall consist of fifty per cent (50%) of the membership present in person (or by a proxy)."
In each of the four suits, the trial court resolved the issue of corporate control as contended for by Reverend Tyler. The trial judge reached this conclusion by finding that (1) Article VII(C) of the Articles of Incorporation of Bethel only states the necessary qualifications of members and does not serve as a rule for admission to the corporation; (2) the Articles of Incorporation of Bethel do not otherwise provide any rules for admission of members; and, (3) appointment to membership in Bethel was the prerogative of the pastor of the Church because this had been the traditional method. Although we disagree with these findings, for the reasons which follow, we reach the same result.
Nowhere in the Articles of Incorporation is it provided that the pastor of the Church has the authority to appoint the membership in Bethel. If a corporation fails to provide rules governing the admission of members in its Articles of Incorporation or By-Laws, the non-profit corporation laws of this state are controlling (see LSA-R.S. 12:217(C)) not the traditional practice of that corporation.
However, we find that the Articles of Incorporation of Bethel do provide for the admission of members. Specifically, we find that Article VII(C) of the Articles provides that all members of the Board of Trustees of the Church automatically become members of Bethel. Article VII(C) further permits the appointment of additional members by the trustees of the Church from the non-trustee members of the Church.
Even if this article be considered ambiguous, the circumstances surrounding the incorporation of Bethel supports this construction. The record reflects that the property comprising the apartment complex will be returned to the Church whenever the mortgage on the apartments is paid off. The A.M.E. Church, as a national organization, has been generally involved in low cost housing projects. At the start of this project, Reverend Haughton obtained specific approval of the project from his superiors in the Church and has since kept them apprised of the project. It has been the practice of the Church to form a non-profit corporation to develop and manage these projects. The various churches use different methods for keeping indirect control of the non-profit corporation. Article VII(C) effectuates this indirect control of the Church over Bethel by appointing the Board of Trustees of the Church as members of Bethel with the authority to elect a Board of Directors to manage and develop the projects. This interpretation is further supported by the circumstance that the Articles of Incorporation are otherwise silent as to the acquisition of membership in the Corporation.
No one questions that the Board was properly constituted prior to October 1, 1980. We, therefore, assume that it was. On that date Reverend Haughton, according to his own testimony, lost his membership on the Board of Trustees of the Church upon resigning as pastor. Although he was still a member of the Church, he did not receive approval of the Board of Trustees of the Church. Article VII(C) provides that membership in Bethel is at all times limited to members of the Board of Trustees of the Church or members of the Church who have the approval of said Board. Reverend Haughton, therefore, ceased to be a member of Bethel.
Although Reverend Haughton ceased to be a member in Bethel, he did not cease to be a director. Pursuant to LSA-R.S. 12:224(C) he continued to hold office in a caretaker status until his successor was elected and qualified.
Reverend Tyler, as ex-officio member and the nineteen individuals elected to the Board of Trustees of the Church, on February *1318 18, 1981, became members of Bethel pursuant to Article VII(C) of the Articles of Incorporation of Bethel.
Despite the allegations that the February 18, 1981 meeting called by Reverend Haughton elected a new Board of Directors of Bethel, the minutes indicate that this was an alleged election of officers of the Board of Directors by the Board and not an election of the Board of Directors by the then members of the Corporation. This meeting of February 18, 1981 was invalid insofar as it purported to elect a new Board of Directors for Bethel.
Article VIII of the Articles of Incorporation of Bethel provides that there shall be eight directors elected at the annual meeting of the members, by the membership from the membership for a term of one year.
Article IX provides that the annual meeting shall take place in February of each year and that the President has the duty to give notice of the meeting. Upon his failure or neglect any member or officer may give the required notice. The article requires notice by United States mail at least ten (10) days prior to the day of the meeting to all members entitled to be present. A quorum of fifty (50%) percent of the membership present in person or by proxy is required.
When Reverend Tyler called his meeting on February 25, 1981, Reverend Haughton had made it apparent that he did not recognize all of the individuals, who were the members of the Board of Trustees of the Church, as members of Bethel and would not give notice to these individuals, who were entitled to be present. Reverend Tyler, as ex-officio member of the Board of Trustees of the Church, is a member of Bethel and upon the failure of the president to give notice could properly do so.
Reverend Tyler gave only a verbal notice of the February 25, 1981 meeting. This verbal notice was given to all members of the Board of Trustees of the Church. The Board of Trustees has never approved a non-trustee member of the Church for membership in Bethel. Therefore, the only members of Bethel, at that time, were Reverend Tyler and the 19 other members of the Board of Trustees of the Church. Of these 20 members, 15 members, which constitutes a quorum, were present at Reverend Tyler's meeting on February 25, 1981. Two of the 15 were present by proxy as authorized by Article IX.
LSA-R.S. 12:230(A) provides that notice is deemed to be given to, or waived by, all members present or represented at a members' meeting. This article further provides that notice of any meeting may be waived in writing by any member at any time.
Considering the above, we conclude that Reverend Haughton was not a member of Bethel on February 25, 1981 and was not entitled to notice of the February 25, 1981 meeting. In the absence of any objection to the lack of notice by the four members who were not present at that meeting, we find that the meeting was legally called. Therefore, the election of the eight members of the Board of Directors was effective and Reverend Haughton and the old Board ceased to hold office.
We, therefore, find that Reverend G.W. Tyler has been the duly elected and qualified president and chairman of the Board of Bethel Apartments, Inc. since February 25, 1981; that on August 24, 1981, Reverend G.R. Haughton lacked the procedural capacity necessary to represent Bethel Apartments, Inc. in a possessory action; that Reverend G.R. Haughton has usurped the office of president and chairman of the Board of Bethel Apartments, Inc., and that he has failed to deliver the papers and effects of the office to his successor.
For the above and foregoing reasons the judgment dismissing Reverend Haughton's possessory action and casting him for costs is affirmed. Costs of appeal are to be assessed against plaintiff-appellant, Reverend G.R. Haughton.
AFFIRMED.
NOTES
[1] The nineteen members elected are listed in Appendix I.