381 So.2d 573 (1980)
Loretta Ray RIVERS, Plaintiff-Appellant,
v.
Jack Looney RIVERS, Defendant-Appellee.
No. 14067.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1980.
*574 Paul Henry Kidd, Monroe, and Ann Woolhandler and Michael G. Collins, New Orleans, for plaintiff-appellant.
Blackwell, Chambliss, Hobbs, Henry by James A. Hobbs, West Monroe, for defendant-appellee.
Before PRICE, HALL and MARVIN, JJ.
PRICE, Judge.
Plaintiff filed suit against her husband to annul a community property settlement agreement along with a separate claim to make past due alimony executory. The trial court rejected both demands and she appeals. We reverse the judgment denying plaintiff's demand for past due alimony and otherwise affirm.
*575 Mr. and Mrs. Rivers separated in the latter part of 1971. They had agreed to obtain a legal separation and community property settlement on an amicable basis and decided to retain a single law firm to handle their affairs. The law firm chosen had previously represented Mr. Rivers in unrelated matters and the attorney contacted by the couple was initially reluctant to represent both parties. However, after consulting other members of the firm, he agreed to represent them with the stipulation that he would not be an advocate for either party but would simply help them draft the settlement agreement reached between themselves and advise them of its tax consequences. At some time later it was also agreed that the firm would file suit for a separation on behalf of Mrs. Rivers. The separation was ultimately granted on December 20, 1971, and the community property settlement agreement was executed the same day.
In 1977 Mr. Rivers filed suit for a final divorce. Shortly thereafter Mrs. Rivers hired independent counsel and filed a separate suit seeking (1) annulment of the community property settlement agreement on the grounds that her husband had defrauded her by misrepresenting the value of various community assets; (2) annulment of the judgment of separation, alleging it was obtained by collusion; and (3) an alternative award of damages against the law firm which represented her and Mr. Rivers during the negotiation of the community property settlement and the 1971 separation suit. These two suits were consolidated for trial and judgment was rendered granting the divorce in favor of Mr. Rivers and rejecting all Mrs. Rivers' demands. She appeals from the portion of this judgment which denied nullification of the community property settlement agreement. She also appeals a judgment refusing to make past due alimony executory.
Mr. and Mrs. Rivers had tentatively agreed to the basic terms of a community property settlement before the initial consultation with their attorney. Since Mrs. Rivers had never taken an active part in her husband's business affairs, one of their primary goals was to divide the community in such a way as to allow Mr. Rivers to retain all the community's business assets. It was also the couple's intention to agree on a settlement which would be non-taxable to both.
Some time after the couple contacted the attorney, they began an inventory of the community assets. With the assistance of an accountant the couple assigned a value to each of the assets and a balance sheet was prepared by Mr. Rivers which proposed an equal division of the assets according to these assigned values. None of the assets were independently appraised.
At the time the couple was negotiating a settlement, the primary business asset of the community was a 1/6 interest in a corporation which operated a Ford automobile dealership. This corporation was wholly owned by Mr. Rivers, his brother, and one other individual (although Mr. Rivers owned 1/3 of the stock, ½ of his interest was acquired from his parents by inheritance and donation). Mr. Rivers was apparently the managing partner in this venture and he and his brother were actively negotiating to buy out the interest of the third individual. No dividends had ever been paid on the corporation's stock since all the profits from the business were paid out in salaries.
The couple met with their attorney on several occasions during the negotiations. On one such occasion, the ownership of the Ford dealership stock and the basic problems regarding minority interest in closely held corporations were discussed. The attorney advised Mrs. Rivers that the dealership stock would probably never produce any income to her since she was not actively engaged in the business and the profits would be paid out in salaries rather than dividends. He also advised her that the market for sale of the stock would be limited due to the small number of stockholders and the reluctance of outsiders to purchase minority shares in such a closely held corporation.
*576 The agreement ultimately reached divided the property in basic accordance with the balance sheet prepared by Mr. Rivers. Mr. Rivers retained all the business assets, including the Ford dealership stock and assumed liability for all the community debts. He also retained a house on Lake D'Arbone. Mrs. Rivers kept the family home in Monroe and all its furnishings, all the cash on deposit in the couple's various bank accounts, an automobile, and another residential lot located in Monroe. She also relinquished her dower rights in immovable property located in Arkansas, which Mr. Rivers had inherited from his father. The agreement also included a provision stating the parties agreed that the values of the property received by each of them was equal.
At trial the balance sheet prepared by Mr. Rivers and used by the parties in negotiating the settlement was introduced into evidence. This balance sheet listed the value of the community owned Ford dealership stock at $46,500. Mr. Rivers testified this figure represented the cost of the stock when it was acquired in 1964. However, Mrs. Rivers introduced into evidence two financial statements prepared by Mr. Rivers shortly before the settlement agreement was reached which listed substantially higher values for the community owned stock. One prepared in August 1971 valued the stock at approximately $86,000, and the other prepared in November 1971 valued the stock at approximately $84,000. Although both of these financial statements were in the files of the law firm representing the couple, Mrs. Rivers testified she never saw them until the onset of this litigation in 1977.
Mrs. Rivers also testified that both her husband and their attorney had informed her that she had no rights in Mr. Rivers' Arkansas property. She stated that due to this misinformation she did not believe she was in fact relinquishing anything by giving up her rights in the property and consequently no consideration was given her for this relinquishment.
The duty a husband owes his wife in dividing community property is set forth in Pitre v. Pitre, 247 La. 594, 172 So.2d 693 (1965):
Since under the Louisiana community property system the husband during the marriage has the management and control of the community property, one-half of which belongs to the wife, he as the "managing partner" is in a position to know relevant facts concerning this property which his wife does not know. Thus when the marriage is dissolved and the community property is to be partitioned, he stands in a fiduciary relationship toward his wife and owes to her the duty of full disclosure of the community property and its value, and must not conceal or misrepresent any material fact upon which she has a right to rely and upon which she might rely.
Mrs. Rivers contends the trial court erred in failing to find that Mr. Rivers breached his fiduciary duty in each of the following respects: (1) misrepresenting the value of the Ford dealership stock; (2) failing to fully disclose Mrs. Rivers' dower rights in the Arkansas property; and (3) failing to inform her of the community interest in the appreciation in value of his separately owned Ford dealership stock.
Regarding Mrs. Rivers' first contention, we note that there is no evidence in the record regarding the "true value" of the community owned Ford dealership stock.[1] The thrust of her argument is that he mislead her by representing its value at his cost because the business had prospered since he obtained the stock and it would have necessarily been worth more at the time of their separation, as evidenced by the financial statements where he valued the stock at almost twice his cost. In addition she contends that the lower valuation of this stock to reflect a minority shareholder's interest was improper.
*577 As the trial court pointed out, Mrs. Rivers is a woman with a higher than average knowledge of business and finance and had a general understanding of her husband's business affairs. She obtained her Bachelor's Degree in Accounting with an overall grade average of 3.9. A few years after her separation from Mr. Rivers, she returned to school and obtained her Master's Degree in Business Administration with a perfect 4.0 average. She subsequently passed the CPA exam on her first try.
At the time of the separation Mrs. Rivers had a clear understanding of the operating structure of closely held corporations and the problems surrounding minority interest in them. She knew that Mr. Rivers and his brother were planning to purchase an additional 1/3 of the corporation's stock, thereby gaining complete control of the company management. She also acknowledged that since her husband had been active in the actual management of the corporation, she agreed to work out a settlement whereby he could keep the business assets, indicating that she realized these assets would be worth more to her husband than they would be to her.
Because of the peculiar circumstances involved, the "true value" of this stock would necessarily vary depending on its owner's relative position in the corporation. While it may have been true that retaining all the community stock resulted in the value to Mr. Rivers being well in excess of his original cost, her retention of a 1/12 interest in the corporation would have rendered that stock almost valueless. Considering all these factors, we do not find Mr. Rivers' valuation of the dealership stock to be a breach of his fiduciary duty.
Mrs. Rivers' second contention is also without merit. Although the balance sheet used in negotiating the settlement did not list her dower rights in her husband's Arkansas property, the final agreement contained the following language:
WHEREAS, Appearer, Jack Looney Rivers, is the owner of certain real estate located in the State of Arkansas, acquired by him before his marriage, but in which real estate Appearer, Loretta Ray Rivers, has certain dower and/or homestead rights under the laws of that state; ...

* * * * * *
For and in consideration of the agreements and promises herein contained, Loretta Ray Rivers, wife of Jack Looney Rivers, does hereby devise, release, convey and transfer to the said Jack Looney Rivers, and to his heirs and assigns, all of her right, title, interest, equity and estate in and to any and all real property which she may own in the State of Arkansas or may hereafter acquire in the State of Arkansas, and specifically, without in any manner diminishing the grant and conveyance aforesaid, release and relinquish to him, his heirs and assigns, all of her right or possibility of dower and homestead in and to any and all of his said lands in the State of Arkansas which he now owns or may hereafter acquire. It is understood and agreed: That from and after the execution of this agreement, the said Jack Looney Rivers may sell, assign, mortgage, lease, or otherwise act with reference to the said lands in the State of Arkansas as fully and completely as though he were a single person. In the event that the signature of Loretta Ray Rivers or the execution of any instrument shall be required or needed, she does covenant and agree to execute and deliver any such instrument with reference to any and all the said lands in the State of Arkansas. Loretta Ray Rivers does further hereby acknowledge that she has entered into this agreement with full knowledge of the property which Jack Looney Rivers owns in the State of Arkansas and that her execution of this agreement is without coercion or undue influence on the part of Jack Looney Rivers.
Mrs. Rivers also signed a separate document relinquishing all rights in this property. The only evidence that indicates she was not informed of her rights was her own uncorroborated testimony.
*578 We also find no breach of duty on Mr. Rivers' part in failing to inform his wife of the community interest in the appreciation of his separately owned stock. First of all there is no evidence that Mr. Rivers was even aware that any such interest existed. Furthermore, there was no proof of (1) the extent to which their separate property had appreciated, if any; (2) whether or not this appreciation was the result of Mr. Rivers' efforts; or (3) whether or not the community had already been adequately compensated for this appreciation through the salary paid to her husband.
The 1971 separation judgment awarded Mrs. Rivers $1,200 per month alimony for her and their children. In October 1978 the court increased this award to $1,350 per month for Mrs. Rivers alone. In May 1979 Mr. Rivers ceased making these payments and on July 17, 1979, Mrs. Rivers filed a rule for contempt along with a demand to make past due alimony executory. The court rejected her demands on the ground that Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) rendered Louisiana's alimony laws unconstitutional.
We reverse this judgment. Although Civil Code Article 148, as written before its amendment in 1979, allowed alimony pendente lite in favor of the wife only, any declaration of its unconstitutionality would be nonretroactive and would have no effect on judgments rendered under that statute prior to its amendment. Lovell v. Lovell, 379 So.2d 418 (La.1979). Furthermore, a spouse is under a continuing duty to pay court ordered alimony until such time as the original order is terminated or amended by a subsequent judgment or by operation of law. Theriot v. Melancon, 311 So.2d 578 (La.App.3d Cir. 1975) and the cases cited therein. Consequently, once it was established that the alimony payments were past due, the trial court erred in refusing to make the past due amounts executory.
Mr. Rivers did not pay the $1,350 monthly alimony for May, June, and July 1979. Mrs. Rivers is therefore entitled to judgment in the amount of $4,050.00.
For the foregoing reasons, the judgment denying plaintiff's claim for annulment of the community property settlement agreement is affirmed. The judgment denying plaintiff's claim for past due alimony is reversed, and it is ordered that there be judgment in her favor for $4,050.00, with legal interest on each of the $1,350.00 payments from the date it became due. Costs of this appeal are assessed equally to plaintiff and defendant.
NOTES
[1] None of the financial statements introduced into evidence were admitted for the purpose of showing the value of the community stock.