423 So.2d 1277 (1982)
Beverly Ann Samuelson Katz, Wife of Norman Edward KATZ
v.
Norman Edward KATZ.
No. 12863.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1982.
Rehearing Denied January 14, 1983.
*1278 A.D. Freeman and Charlotte A. Hayes, Satterlee, Mestayer & Freeman, New Orleans, for plaintiff.
Maury A. Herman and Matthew P. Chenevert, Herman, Herman, & Katz, New Orleans, for defendant.
Before REDMANN, C.J., and LOBRANO and WARD, JJ.
REDMANN, Chief Judge.
Ex-spouses both seek reversal in part of a trial court judgment that (1) dismissed the ex-wife's demand against the husband for mismanagement of the community-owned furniture store and (2) held that a certain undivided interest in property that the ex-husband acquired indirectly from his mother's succession by "sale" from a coheir September 23, 1975 belonged to the community. We affirm the first and reverse the second part of the judgment.

The Demand for Mismanagement
The ex-wife sought a judgment declaring the ex-husband indebted to the community, and thus to her, because of his mismanagement of the community's furniture store. (The store actually operated in corporate form, a circumstance we ignore as the parties have.) We conclude that a wife has no action against her husband for mismanagement of a community-owned business unless the husband's mismanagement amounts to "fraud, to injure his wife." La. C.C. 2404. (All community property article citations are to those articles prior to their revision by La. Acts 1979 No. 709).
Under former C.C. 2425 a wife might petition for separation of property during the marriage
whenever her dowry is in danger, owing to the mismanagement of her husband, or otherwise, or when the disorder of his affairs induces her to believe that his estate may not be sufficient to meet her rights and claims.
The several articles in the chapter on separation of property during marriage, arts. 2425-2437, do not give the wife any other remedy for mismanagement. Specifically, there is no hint in those articles that the wife might charge to the husband's separate estate any loss to the community resulting from his mismanagement.
Former C.C. 2405-2423, governing the division of the community upon dissolution of the marriage, equally afford no support to a claim that the husband's separate estate should be liable to the community for his mismanagement of the community's assets.
The only article that we find that would support a wife's claim against the husband for improper handling of community property is former art. 2404.
*1279 Under C.C. 2404, the only circumstance under which a wife had a claim against the husband for mishandling community assets was the case of disposition "by fraud, to injure his wife ...." This article envisions a disposition of property "conceived with the intent to reduce the wife's community interest ...." Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12, 20 (1956).
There is no evidence of any fraud in this record, and no evidence of a disposition of property intentionally designed to injure the wife by reducing her community interest.
The judgment rejecting the wife's demand for mismanagement is therefore affirmed.

Character of the Disputed Property
The disputed property came from the ex-husband's mother's succession. The mother left her estate (save special legacies) to her three children, Ellen, Albert and Norman. Albert did not wish to remain a co-owner in indivision, and by a document titled a sale he ceded virtually all of his interest to the other two for a recited price of $120,000. That document, however, specified a division of certain insurance policies owned by the mother (2/9 to each child and 3/9 to the father, to be represented by new, separate policies) but noted that the maximum loan value was being obtained from those policies, with each of the three children to "receive his proportionate share of same, except that the sum to be received by Albert Katz shall be included in the $120,000 paid to him this date." From that document and other documentary evidence and testimony, it is fair to conclude that the original plan of the three children was that Albert's entire share of his mother's succession was to consist of the maximum loan value (to be obtained by the succession from the insurers) of the four insurance policies (on their father's life) that were 100% owned by the mother, plus an actual division of those policies such that Albert would receive a separate policy for two ninths of their total face value (subject to two ninths of the loan being made), plus sufficient cash from Ellen and Norman to make Albert's total cash receipts $120,000. The fact is that the parties did not await receipt from the insurers of the proceeds of the loan, nor did they merely confirm to Albert the undivided ownership of the right to receive the loan proceeds (they had initiated the loan requests in the name of the succession). Instead Ellen and Norman borrowed (with their father as guarantor) the whole $120,000 rather than just the $76,000 that they intended to provide in addition to the $44,000 loans on the insurance policies.
It may also be observed that a partition would have been accomplished by the remaining coheirs' ceding to Albert the loan value of the decedent's separately-owned insurance policies plus a divided policy for two-ninths of their value (plus a compensating balance of cash to make Albert's share equal in value to each other co-heir's), in exchange for Albert's "giving up his right in the thing[s] which he abandons," C.C. 1382, to the other co-heirs (those things being the remaining assets of the succession). Notwithstanding that only one co-heir's indivision would be thus terminated, the result is a partition, from which the other co-heirs are held to have inherited (still in indivision) the property they take, as Aubry & Rau, Droit Civil Francais, Intestate Successions, § 625, n. 6 (La.Law Inst. tran. 1971), explain:
[T]he divided and definitive attribution to one of the co-heirs, in order to satisfy his rights as such, of one or more things belonging to the succession is equivalent, in these conditions, to a partition, although the other coheirs will still remain undivided co-owners ... The retroactive effect of [C.N.] Art. 833[1] is produced, then, not only concerning the property attributed to the co-heir to whom an allotment has been made ... but also concerning *1280 the property remaining in indivision between the others. [Citing several decisions.]
The Projet of the Civil Code of 1825, p. 169, commenting on the suppression of conflicting language in Digest 1808, p. 186, art. 162, observes: "The act of partition ought not to be considered an act by which property is acquired, but an act which determines the things which each heir inherits" (citing Pothier, Successions, ch. 4, art. 5 § 1). The same Projet, p. 202, dropped the wording, but not the principle, of Digest 1808, p. 206, art. 249, that explained why a mortgage created by one co-heir would affect not his initial theoretical undivided interests but only the share that that co-heir ultimately received from a partition. (That principle exists today in C.C. 1338). The Projet comment on the words "undetermined right" of each coheir shows that those words were used "because the heir to whose lot such property falls, is considered as having been seized of the whole of it, ever since the opening of the succession" (by death, C.C. 934). Thus "An act of partition is not `translative' of, but merely `declaratory' of, property." Kernan v. Baham, 45 La.Ann. 799, 13 So. 155, 160 (1893). Kernan quotes Dalloz, Dictionaire de Jurisprudence, as explaining that each co-heir is deemed to have succeeded alone immediately to the effects comprised within his lot in kind or acquired by him through licitation, and never to have been a proprietor of the other objects of the succession. See also, Aubry & Rau, § 625, n. 1. Our view is that the voluntary partition among the co-heirs is not different from the judicial partition in kind or by licitation, in respect to the nature of the juridical act converting theoretical undivided interests into separate ownerships; like the other partitions, the voluntary partition is not translative of property but merely declarative of property.
Nor does the payment by a co-heir of a compensating balance to equalize the co-heirs' shares in a voluntary partition alter the character of the partition, nor change the nature of the property from separate to community; Ortego v. Morein, 212 La. 774, 33 So.2d 516 (1948). La.C.C. 1366[2] expressly provides that when a judicial partition in kind results in lots of unequal value "such inequality is compensated by a return of money, which the co-heir, having a lot of more value than the other, pays to his co-heirs." The Code can therefore not be interpreted to prevent a voluntary partition that includes a compensating balance, for art. 1322 declares that a partition among heirs all of age and present "may be made in such form and by such act as the parties interested agree upon." Ortego expressly held that a voluntary partition-sale with a compensating balance resulted in inherited separate property to the "purchaser."
Notwithstanding, therefore, the form of sale (with the recitals aforesaid) that the parties used, we conclude that the substance of the transaction was the permissible partition described above. That being its substance, C.C. 1322 allows it to be embodied in whatever form the parties agree upon.
Our ultimate conclusion is that Ellen and Norman, through that partition in "sale" form, must be deemed to have acquired their interests by immediate succession from their mother, and Norman's interests are therefore classified by C.C. 2334 (prior to its amendment by Acts 1979 No. 709) as separate rather than community property.
Having thus concluded that the "sale" in question is in law a voluntary partition resulting in separate property to the ex-husband, we do not consider the effect of the ex-wife's having intervened in that act "to acknowledge the paraphernality of the funds so utilized and that the above-described property is the separate and paraphernal property of her said husband."
The judgment appealed from is affirmed insofar as it rejected the ex-wife's claim for *1281 mismanagement of the community and it is reversed insofar as it declared community property the ex-husband's interests resulting from the "sale" dated September 23, 1975. Costs are to be divided equally.
NOTES
[1] "Each co-heir is considered to have succeeded alone and instantly to all the effects included in his lot, or fallen to him upon licitation, and never to have had the ownership of the other effects of the succession."
[2] "When the lots are of unequal value, such inequality is compensated by means of a return of money, which the coheir, having a lot of more value than the other, pays to his coheirs."