FREDERICKA HOMBERG WICKER, Judge.
| :>The defendants appeal the trial court’s grant of the plaintiffs’ writ of quo warran-to. For the reasons that follow, the judgment is amended to reflect that A. J. Vicari validly holds only the offices of corporate director and president. As amended, the judgment is affirmed.
Factual and Procedural Background
The St. Rose Deer Club, Inc. (Club) was founded in the late 1930’s though not incorporated until September 3, 1993. A.J. Vicari, Russell Viola, Michael Croll, and Ed Boldt were the first board of directors (Board) and initial officers of the corporation — president, vice-president, secretary, and treasurer, respectively. Sometime in 2001, Boldt tendered his resignation and three of the Club’s officers — Vicari, Croll, and William H. Lee — elected Ronnie Ra-natza, Sr. to the board. At the time of Ranatza’s election, only two original board *66 members remained, because Croll had also resigned.
The Club’s custom since its inception was that its officers, i.e. president, vice-president, etc, were elected by direct vote from the general membership. Vicari had been elected president annually at the January meeting from the date of | .¡incorporation through 2010.[1] At the January 5, 2011 meeting, however, the Club’s organizational structure was disturbed and Vicari’s long running stretch as president ended. Twenty-one members, including Vicari, were present at the January 5th meeting wherein a member moved to elect new officers. As a result of the motion, Wayne Williams was elected the new president — 15 votes were cast in his favor while 6 votes were cast in Vicari’s favor. Wilton Demuth was elected vice-president — 12 votes were cast in his favor while 9 were cast in his opponent’s favor. Robert Cañedo was unopposed for secretary. And Vicari was elected as treasurer — 11 votes were cast in his favor and 9 votes for his opponent.
Shortly after that meeting, on January 21, 2011, the Club’s directors — Vicari, Viola, and Ranatza — directed letters to 16 Club members, namely those who voted against Vicari for president, indicating that the board was holding a meeting on February 2, 2011, from 5:30 P.M. to 6:30 P.M., to discuss their removal. The letter specifically stated that the members were subject to removal, in pertinent part, for the following:
1. At monthly meeting of the St. Rose Deer Club attended by you on January 5, 2011, you voted to remove A.J. Vicari as President of the St. Rose Deer Club. The vote to remove Mr. Vicari was in violation of Article X of the Articles of Incorporation of the St. Rose Deer Club, which provide that the Board of Directors shall elect officers, and the Louisiana law, which provides likewise. This violation of the Articles of Incorporation and Louisiana law jeopardizes the St. Rose Deer Club’s status as a Louisiana non-profit corporation for failure to adhere to the formalities required by the Articles of Incorporation and Louisiana law.
A separate letter, however, was sent out that same date indicating that the annual meeting would be held at 7:00 P.M., after the removal hearing. Vicari signed this letter in his capacity as president, notwithstanding the fact that he had been removed from office two weeks earlier.
|4On January 31, 2011, the directors sent a follow-up letter which indicated that the removal meeting originally scheduled for February 2nd had been rescheduled, due to logistical reasons, to February 15, 2011, and would be held at the Law Office of Robert Garrity, Jr., located at 1905 Hickory Avenue in Harahan, Louisiana. The follow-up letter was signed only by Vicari and Ranatza.
The regular annual meeting, however, was, in fact, held on February 2, 2011, at the Club’s clubhouse. Neither Vicari nor Ranatza attended. However, nineteen members attended, and the meeting was convened by the newly elected president, Williams. Presumably in response to the removal notices, Williams polled the members to inquire whether anyone knew of the use of by-laws to govern the Club— seventeen members answered negatively while two members expressed their desire to remain neutral. A member then asked *67 whether “Tony[2]” or “Ronnie Sr.” had ever been voted on by the membership to be board members. The minutes reflect that “the answer was a resounding NO.”
On February 15, 2011, a purported annual meeting and removal proceeding occurred at Garrity’s law office. Seven members, including Vicari, were present. None of the members subject to removal appeared. Fourteen of the sixteen members subject to removal were unanimously voted to be removed from the Club. Once the removal proceedings concluded, the seven members proceeded with the meeting in which they purported to elect new directors and officers of the Club.[3] Vicari, Ranatza, and Cesar Fonseca were elected corporate directors. Ranatza was also elected vice-president; Fonseca was elected secretary, and Vicari was elected both president and treasurer. A “Notice of Change of Directors RAnd/Or Officers of a Corporation” was filed with the Secretary of State on February 19, 2011, reflecting the change. Garrity was voted in as a new member during the February 15th meeting. The removed members were notified of their removal by letter dated February 18, 2012.
On February 23, 2011,18 Club members directed a letter to “President” in which they requested an annual meeting be held pursuant to Article XI of the articles of incorporation. Vicari responded to that letter on March 9, 2011, stating that the removed members had no standing to demand an annual meeting. He further stated that the annual meeting was held on February 15, 2011, wherein the members elected a new board and wherein the board elected new officers, including himself as president.
The plaintiffs/appellees, Cañedo, De-muth, and Williams, responded by filing a Petition for Writ of Quo Warranto in the 24th Judicial District Court on April 26, 2011, against the defendants/appellants, Vicari, Ranatza, Fonseca and the Club. The petition challenged the defendants’ positions as officers/directors of the Club. The matter proceeded to trial on June 30, 2011. The trial court took the matter under advisement and issued a judgment on September 2, 2011, which stated:
IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs’ Petition for Writ of Quo Warranto is hereby granted in part such that the St. Rose Deer Club is ordered to direct and hold a special meeting of the members of the Club, with notice of the meeting to be mailed to all those who were members of the Club as of the January 2011 meeting. Notice of the meeting is to be mailed at least Fifteen (15) days in advance of the meeting. The meeting is to be held at the Clubhouse for the purpose of electing the members of the Board of Directors of the Company, who will then elect the officers for the remainder of the current term for each of those offices (set to expire according to the Bylaws and Articles of Incorporation).
The defendants appealed and assign the following errors:
lfil. The trial court erred as a matter of law by failing to make a ruling determining whether the defendanVappel-lants sufficiently showed by what au *68 thority they held office as mandated by the quo warranto proceeding; and
2. The trial court erred as a matter of law in granting relief to the plaintiff/appellees in the form of a special meeting to elect directors and officers, which is beyond the scope of the writ of quo warranto under the circumstances.
Discussion
The proper procedure to contest title to an office in a private corporation is a writ of quo warranto. Yee v. Wond, 08-814 (La.App. 5 Cir. 3/24/09), 10 So.3d 791, 793, writ denied, 09-0893 (La.6/5/09), 9 So.3d 873. A writ of quo warranto directs an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. La. C.C.P. art. 3901. “If the court finds that a person is holding an office without authority, the judgment shall forbid him to do so and may declare who is entitled to the office or may direct an election when necessary.” La. C.C.P. art. 3902; Morris v. Thomason, 28,238, p. 3 (La.App. 2 Cir. 4/8/96), 672 So.2d 433, 434. If, however, it is determined that a person holds office by virtue of a valid election, the inquiry ceases, and the writ should be dismissed. Id. The respondent in a quo warranto proceeding has the burden of showing by what authority he or she claims or holds office in the corporation. In re Interdiction of Vicknair, 01-0902, p. 4 (La.App. 1 Cir. 6/21/02), 822 So.2d 46, 50 citing Roser v. Webb, 542 So.2d 122, 124 (La.App. 1 Cir.1989).
Turning to the present case, the Club’s articles of incorporation provide, in pertinent part:
Article X
j7The powers of this Corporation shall be exercised by the Board of Directors which shall consist of four (4) members in good standing of the Corporation to be elected or chosen at the annual meeting of its members.
The Board of Directors shall elect a President, Vice-President [ ] Secretary and Treasurer from the Board’s membership annually to serve until the next Board shall be duly elected as herein provided. Provided, however, that the first Board of Directors of this Corporation shall be those persons stated in Article XIII hereof, and they shall serve until the first annual meeting is held as set out herein. The offices of Secretary and Treasurer may be combined in one person. (Emphasis Added).
Article XI
The annual meeting of the voting members of the Corporation shall be held on the first (1st) Wednesday of the month of February, or in the event that that date is a legal holiday, on the next first (1st) Wednesday of a month thereafter which is not a legal holiday. It shall be the duty of the President, and upon his or her failure or neglect, then of the Secretary or any officer or member, to mail notices at least ten (10) days prior to this annual meeting to all members entitled to be present. Provided, however, that the Board of Directors may by two-thirds (2/3) majority vote elect to conduct the business of the Corporation by mail ballot in lieu of any annual meeting. Provided further, however, that if fifty (50%) percent or more of the members of the Corporation demand in writing, served on the President of the Corporation, that an annual meeting be held, then the President shall take such steps as are necessary to hold an annual meeting not more than forty-five (45) days from the date of receipt of such notice but not sooner than ten (10) days from receipt of such notice. A quorum *69 at any annual meeting or special meeting after due notice shall be those members present and voting at that meeting. (Emphasis Added).
The by-laws additionally provide:
6. All elected officers, can only be chosen from the regular membership roll and must be a member of the club for a minimum of 3 years.... Election of club officers is to be held in January of each year, (emphasis in original).

Validity of the February 15th meeting and Cesar Fonseca’s claim as director and secretary

The Club’s by-laws dictate that officers are elected each year at the January meeting, while Article X provides that the officers shall be elected by the board. | sThe articles further provide that the board shall be elected at the annual meeting, which is to be held on the first Wednesday of February, unless such day is a legal holiday. And in such a case, the annual meeting is to be held on the first Wednesday of the following month. Here, the annual meeting was duly convened on February 2, 2011. Yet, a board of directors was not elected at that time. Instead, a new board was purportedly elected on February 15th — at a meeting guised as the annual meeting.
In Morris, supra, the defendants appealed the trial court’s grant of a writ of quo warranto. In that case, the articles specified that the directors were to be elected at the annual meeting held on the third Monday in January. Id. at 434. Despite that provision, a special shareholders’ meeting was convened in April wherein the shareholders purported to elect a new board of directors. In that case, the Second Circuit stated:
[H]ere, the articles of incorporation provide that the board of directors shall be elected at the annual shareholders’ meeting held on the third Monday in January of each year. Because the articles specifically state when directors are to be elected, the special shareholders’ meeting was improper. Therefore, the trial court did not err in finding that the election of the board of directors on April 12,1995 was invalid.
Morris, supra, at 435.
Likewise, in this case, the articles specifically state that the board shall be elected at the annual meeting convened on the first Wednesday in February. The only provision in the articles that allows for an annual meeting to be held at a different time other than that specified is when the first Wednesday of February falls on a legal holiday or when 50 percent of the members demand so in writing. Because neither scenario applies here, the February 15th meeting and subsequent elections were improper. Due to the invalidity of the February 15th meeting, Fonseca |concedes that he has no authority to claim the office of either secretary or corporate director. We agree.
Ronnie Ranatza’s claim as director and vice-president
Ranatza does not rely on the February 15th elections to claim his authority to hold the positions of director and vice-president. Rather, he relies on his 2001 election to the board. Thus, he bears the burden of proving the validity of that election.
Vicari, Croll, Viola, and Boldt were the initial directors and officers of the corporation. When Boldt tendered his resignation in 2001, however, Vicari, Croll, and Lee elected Ranatza to the board. Since the articles or bylaws do not provide a method for filling board vacancies, La. R.S. 12:224(E)(3) applies.[4] See Bethlehem Mis *70 sionary Baptist Church v. Henderson, 522 So.2d 1339, 1341 (La.App. 2 Cir.1988) (“Since the articles do not provide for a method of calling special meetings and there are no bylaws, LSA — R.S. 12:230 regulates the method of calling these meetings.”); Bethel Apartments, Inc. v. Tyler, 422 So.2d 1312, 1317 (La.App. 3 Cir.1982), (“If a corporation fails to provide rules governing the admission of members in its Articles of Incorporation or By-Laws, the non-profit corporation laws of this state are controlling ... ”). In this case, Ranatza argues that he was duly appointed pursuant to La. R.S. 12:224(E)(3). Granted, La. R.S. 12:224(E)(3) allows the remaining directors to fill a vacancy on the board. Lee, however, was not an initial director. Vicari’s testimony reveals that Lee, who participated in Ranatza’s purported election, was a Club officer. Thus, Ranatza’s 1102QQ1 purported election was improper, and he has invalidly held the office as director since 2001.[5]

A.J. Vicari’s claim as director, president, and treasurer

Vicari appears to be the only member who validly holds his office as director and Club president.[6] Vicari claims his authority from the articles of incorporation. Thus, he bears the burden of proving that no valid elections have occurred since the Club was incorporated.
The articles that were filed in 1993 provide that the initial directors shall serve until the next board is duly elected. It is undisputed in this case that the members have never elected a board of directors. And because Vicari is the only remaining initial director, he still validly claims the office as corporate director. For the same reason, Vicari validly claims the office as president because he has never been replaced in a valid election. Since 1993, the Club’s officers have been continuously elected by direct vote of the membership, notwithstanding the articles that provides that the board shall elect officers. Though such procedure has been the Club’s custom for over 20 years, “customary practices ... may not substitute for written articles or bylaws.” Bethlehem Missionary Baptist Church, supra, at 1341; see also, Bethel Apartments, supra, (“... the non-profit corporation laws of this state are controlling (see LSA-R.S. 12:217(C)) not the traditional practice of that corporation.”).
In sum, we find that the February 15th meeting was improperly convened and all of the purported elections of directors and officers which occurred at that meeting are invalid. Moreover, Ranatza failed to prove that he was validly |n appointed to the board pursuant to La. R.S. 12:224(E)(3). Thus, he has no authority to claim the office of corporate director. But because the Club has never elected a board of *71 directors nor validly elected officers, Vicari remains rightfully vested in the offices of director and president.

Second Assignment of Error

In the second assignment of error, the defendants contend that the trial court erred as a matter of law in granting relief to the plaintiffiappellees in the form of a special meeting to elect directors and officers. The defendants contend that that portion of the trial court’s judgment is beyond the scope of a quo warranto proceeding. We disagree.
La. C.C.P. art. 3902 provides, in pertinent part, “when the court finds that a person is holding or claiming office without authority, the judgment shall forbid him to do so. It may declare who is entitled to the office and may direct an election when necessary.” See Morris v. Thomason, 28,238, p. 3 (La.App. 2 Cir. 4/8/96), 672 So.2d 433, 434. Thus, the trial court acted within its authority to order a special meeting for the election of directors and officers.
As a final matter, we must address the other events that occurred during the February 15, 2011 meeting. Though we have found that the meeting was improperly convened as an annual meeting, we have not specifically addressed the validity of the removal proceedings and Garrity’s election into the membership. In this case, the trial court’s judgment restored the membership of those members who had been removed on February 15th. We do not find that ruling to be manifestly erroneous.
Paragraph 10 of the bylaws provide, in pertinent part, “a member can only be voted out of the club with a 2l3rds vote of the entire membership, with the exception of associate members, who may be voted out by a majority vote of the | ^officers of the club.” (Emphasis in Original). Thus, in order for the removal proceedings to have any effect, 16 members would have had to vote favorably for the removal.[7] The record reveals, however, that only seven members attended the meeting. Therefore, the removal proceedings are null and void.
We, likewise, find that Garrity’s admission into the Club was invalid. Paragraph 14 of the by-laws provide: “[a]ll new full time club members must be voted on from the associate memberships. Any person being considered as a club member shall be nominated for entry as an Associate member at the January meeting and voted upon at the February meeting.” (Emphasis in Original). The minutes from January 5, 2010, indicate that only Jonathan Albert, David Benton, and Gary Gui-dry were nominated as possible associate members to be voted on for membership at the February meeting. Because Garrity was not nominated at the January meeting, his purported election on February 15th was also invalid.
Conclusion
For the reasons stated above, all the proceedings that occurred at the February 15th meeting, including the election of officers, directors, and new members, as well as the purported removal proceedings, are invalid. We amend the trial court judgment, however, to reflect that Vicari is the only person who validly claims the position as director and president, though not the office of treasurer. As amended, the judgment is affirmed.

AFFIRMED AS AMENDED

. The record suggests that Vicari had been routinely elected president dating back to 1970.

. Presumably "Tony'' is Anthony J. Vicari a/k/a A.J. Vicari.

. The testimony indicates that the February 15, 2011 meeting was transcribed. The transcript, however, is not part of the record before this Court; therefore, the order of the proceeding cannot be gleaned from the record. There is conflicting testimony regarding whether the board or the officers were elected first. However, for reasons discussed in the opinion, such distinction is not dispositive in this particular case.

. La. R.S. 12:224(E)(3) provides:
The remaining directors, even though not *70 constituting a quorum, may, by a majority vote, fill any vacancy on the board (including any vacancy resulting from an increase in the authorized number of directors, or from failure of the members to elect the full number of authorized directors) for an unexpired term, provided that the members shall have the right to fill the vacancy at any special meeting called for the purpose prior to such action by the board.

. Even if Lee had been qualified to participate in Ranatza's election, there is no evidence in the record that the members were first given an opportunity to fill the vacancy as required by La. R.S. 12:244(E)(3).

. We have already determined that the February 15 th elections were improper, thus invalidating Vicari's purported election as treasurer. We must point out, however, that Article X provides, in pertinent part, "the offices of Secretary and Treasurer may be combined in one person.” Thus, there is no provision in the articles which would have allowed for Vicari to hold both the offices of president and treasurer if a valid election had occurred.

. The minutes from February 2, 2010, reflect that the Club was at its maximum membership of 25 members.