MARC E. JOHNSON, Judge.
|2Pefendant, Melissa Schexnayder, appeals the trial court’s granting of a writ quo warranto in favor of plaintiff, Wade Schexnayder, in which the trial court determined that Ms. Schexnayder did not carry her burden of proving she had authority to hold the office of president of Yolande Schexnayder & Son, Inc. (“YSS”), and that Mr. Schexnayder continues to have the voting rights of 7,500 shares of stock that were the subject of an Act of Donation to Ms. Schexnayder in 2008. For the reasons that follow, we affirm.

FACTS & PROCEDURAL HISTORY

YSS, which is in the business of selling clay and dirt material, is a closely held corporation that was incorporated in September 1989 by plaintiffs grandfather, Yo-lande Schexnayder, and Yolande’s son, Carroll Schexnayder. At the time of incorporation, YSS issued 5,000 shares of stock to Yolande and his wife Beatrice, and 5,000 shares of stock to Carroll and his wife Sharleen. In 1992, both Yolande and Carroll donated 2,500 shares of their YSS stock to Mr. |3Schexnayder for a total of 5,000 shares.[1] Later, in 2007, Yolande made a second donation of 2,500 shares of stock to Mr. Schexnayder, giving him a total of 7,500 shares in YSS.
On September 22, 2008, Mr. Schexnay-der executed an Act of Donation donating all of his separate property, including his interest in YSS, to Ms. Schexnayder with the stipulation that the donated property “form part of the community existing between the Donor and the Donee.” Thereafter, in 2009, Mr. Schexnayder purchased an additional 5,833.34 shares of YSS stock from relatives who had inherited the shares from their parents. And, in 2010, both Mr. and Mrs. Schexnayder purchased 1,666.68 shares of YSS stock from various relatives.
Between February 2008 and January 2012, Mr. Schexnayder was the president of YSS and ran the day-to-day operations of the business. At the same time Mr. Schexnayder became president, he used his shares to vote Ms. Schexnayder to the board of directors.
On December 22, 2011, Ms. Schexnay-der, as Secretary/Treasurer of YSS, issued a Notice of Meeting of the Shareholders *627 and Board of Directors of YSS set for January 5, 2012. At the shareholders’ meeting, YSS’s corporate attorney advised that upon review of several documents, including the 2008 Act of Donation by Mr. Schexnayder to Ms. Schexnayder, he determined that Ms. Schexnayder was the owner of 11,250, or 75%, shares of YSS stock, and Mr. Schexnayder was the owner of 3,750 shares, or 25%, shares of YSS stock. According to Mr. Schexnayder, he objected to this determination but his objection was not noted in the minutes of the meeting. Thereafter, a new board of directors [4was elected, which included Mr. Schexnayder, Ms. Schexnayder and Matt Milazzo, who was present through a proxy and was elected to the board solely through Ms. Schexnayder’s votes.
Immediately after the shareholders meeting, a meeting of the board of directors was held. During the meeting, Mr. Schexnayder was removed as President of YSS, and Ms. Schexnayder was elected president through her votes and those of Mr. Milazzo by proxy. Ms. Schexnayder also used her votes and those of Mr. Milazzo by proxy to elect herself as Treasurer of YSS.
On February 7, 2012, Mr. Schexnayder filed a Petition for Mandamus and Quo Warranto, for Temporary Restraining Order and for Injunctive Relief claiming, among other things, that Ms. Schexnayder wrongfully usurped control of YSS. He sought issuance of a writ of quo warranto be issued to force Ms. Schexnayder to explain by what authority she acted in removing him as president of YSS and voting herself in as president and her brother-in-law, Matt Milazzo, in as a director. Mr. Schexnayder further sought to enjoin Ms. Schexnayder from further acting as a YSS officer.
A show cause hearing was held on May 21, 2012. At the conclusion of the hearing, the trial court determined that Ms. Schex-nayder had not carried her burden of proving that she had the right to vote the 7,500 shares of stock that were donated to her in 2008, and thus had not shown she had the right to vote herself as President and Treasurer of YSS. The trial court noted that the 2008 donation clearly stated the stocks were to be community property and made no reference to voting rights. It further noted the stock certificates for the 7,500 shares were still in Mr. Schexnay-der’s name, and there had been no request to transfer the stock certificates to Ms. Schexnayder’s name, despite the passage of more than three years from the act of donation to the January 2012 meeting. As such, the trial 15court granted the writ quo warranto in favor of Mr. Schexnayder and found he continues to have the voting rights to the 7,500 shares of stock he donated to Ms. Schexnayder.

ISSUE

On appeal, Ms. Schexnayder challenges the trial court’s determination that the Act of Donation did not transfer the voting rights of the 7,500 shares of stock. She maintains that the voting rights were included in the donation of the stock and that Mr. Schexnayder would have had to have made a specific reservation in the donation in order to retain those voting rights, which he did not do. She also contends the trial court erred in relying on parole evidence, specifically the conduct of the parties after the act of donation, to determine the intent of the parties regarding the voting rights of the donated shares.

LAW & ANALYSIS

The proper procedure to contest title to an office in a private corporation is a writ of quo warranto. Canedo v. Vicari, 11-1116 (La.App. 5 Cir. 5/8/12); 99 So.3d 64, 68. A writ of quo warranto directs an *628 individual to show by what authority he or she claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. La. C.C.P. art. 3901. If the court determines that a person is holding an office without authority, the judgment shall forbid him to do so. The judgment may further declare who is entitled to the office or may direct an election when necessary. La. C.C.P. art. 3902. However, if it is determined that a person holds office by virtue of a valid election, the inquiry ceases, and the writ should be dismissed. Canedo, supra. The respondent in a quo warranto proceeding has the burden of showing by what authority he or she claims or holds office in the corporation. Id.
|fiMs. Schexnayder claimed she validly held the office of president by virtue of an election by the board of directors in which she held the majority of voting shares through the voting rights of 7,500 shares of stock that were donated to her by Mr. Schexnayder in 2008. The 2008 Act of Donation states, in pertinent part:
WADE J. SCHEXNAYDER, SR., a person of the full age of majority, domiciled in the Parish of St. James, State of Louisiana [“Donor”], who declared that, in consideration of the love and affection which he bears to his spouse, Melissa D. Schexnayder, he does, by these presents, make a gift and donation inter vivos, UNTO said:
MELISSA D. SCHEXNAYDER [“Donee”], hereby appearing for the purpose of accepting the same of the following:
All of Donor’s separate property, including, but not limited to, bank accounts, brokerage accounts, publicly traded securities, annuities, life insurance, all of Donor’s interests in the Successions of Yolande and Beatrice Schexnayder, the Succession of Carroll Schexnayder, Sr., and all of Donor’s right, title and interest in and to the following entities: Yolande Schex-nayder & Son, Inc., Schexnayder Industrial Services, Inc., Schexnayder Holdings, L.L.C., Belle Vue Estates and Acadia Development Corporation.
TO HAVE AND TO HOLD unto the said Donee, her heirs and assigns, forever, SUBJECT, HOWEVER, TO THE FOLLOWING STIPULATION: The donated, property shall form part of the community existing between the Donor and the Donee.
[Emphasis in original.]
No one disputes that this Act of Donation included the 7,500 shares of YSS stock that Mr. Schexnayder owned as his separate property. However, the parties dispute the effect of this donation. Ms. Schexnayder argues that this Act of Donation gave her the exclusive right to vote all 7,500 shares. Conversely, Mr. Schexnay-der contends the Act of Donation only gave Ms. Schexnayder an undivided one-half interest in the 7,500 shares of stock and not any real rights, such as voting rights.
j 7Under La.- R.S. 12:601, the person in whose name a stock certificate is issued is the legal owner, and a corporation and its officers are bound to recognize as legal owner only the person in whose name a stock certificate is issued. While a stock certificate is prima facie evidence of ownership, actual ownership may be determined from the facts and circumstances of a case. Ackel v. Ackel, 595 So.2d 739, 741 (La.App. 5th Cir.1992). Only shareholders of record on the books of the corporation are entitled to vote at meetings, unless otherwise provided in the articles of incor *629 poration.[2] La. R.S. 12:75; Pollock v. Pollock Engineering Co., Inc., 365 So.2d 1186, 1189 (La.App. 3rd Cir.1978).
In this case, Mr. Schexnayder’s name appears on a 1992 stock certificate for 5,000 shares. Additionally, the evidence shows a valid donation of 2,500 shares of stock from Yolande to Mr. Schexnayder in 2007 with reference to a 1989 stock certificate, which was admitted into evidence. Although Mr. Schexnayder’s name does not appear on the 1989 stock certificate for the 2,500 shares, the record shows a valid transfer of the stock ownership to Mr. Schexnayder. See In re Interdiction of Vicknair, 01-902 (La.App. 1 Cir. 6/21/02); 822 So.2d 46, 51. The record shows that Ms. Schexnayder’s name does not appear on either of the stock certificates relating to these 7,500 shares. Thus, we must determine the effect the 2008 Act of Donation had on the stock ownership.
Under La. C.C. art. 2343.1, “[t]he transfer by a spouse to the other spouse of a thing forming part of his separate property, with the stipulation that it shall be part of the community, transforms the thing into community property.” [Emphasis added.] Comment (b) of this Article explains that, “[i]n effect, the transferor conveys to the other spouse one-half of what he owns and retains the other half as co-owner under the regime of acquets and gains.” Under the general principles of lacommunity property, “[e]ach spouse owns a present undivided one-half interest in the community property.” La. C.C. art. 2336.
Contrary to Ms. Schexnayder’s position that the Act of Donation gave her the 7,500 shares of YSS stock unencumbered as her separate property, we find that the clear and unambiguous language of the 2008 Act of Donation, indisputably made the 7,500 shares of stock a part of the community. As such, Ms. Schexnay-der owned an undivided one-half interest in the shares.
Generally, either spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law. La. C.C. art. 2346. Under La. C.C. art. 2351, each spouse has the exclusive right to manage, alienate or encumber moveables issued or registered in his name. Shares of stock are incorporeal movables, and shares of stock issued in the name of a spouse are subject to management by that spouse exclusively. La. C.C. art. 473; Champagne v. Champagne, 07-1078 (La.App. 1 Cir. 6/27/08); 992 So.2d 1072, 1075; Rao v. Rao, 05-0059 (La.App. 1 Cir. 11/4/05); 927 So.2d 356, 366, writ denied, 05-2453 (La.3/24/06); 925 So.2d 1232.
In Pollock, supra, a wife filed a writ of mandamus after her divorce claiming she was the owner of one-half of the 80 shares of stock of the defendant corporation. The wife sought an order to force the corporation to cancel the stock certificates in the name of her ex-husband and to issue a new stock certificate showing her as owner of half of the shares, or 40 shares. The trial court found the 80 shares of stock were community property and refused to order the corporation to issue a new certificate for 40 shares in the wife’s name because there had been no partition of the community. However, the trial court ordered the corporation to recognize the wife as the owner in indivisión with her husband and to afford her all 13the rights accompanying such ownership, including the right to vote at shareholder meetings.
The appellate court found the trial court correctly determined that upon dissolution *630 of the community by divorce, Mr. and Mrs. Pollock became owners in indivisión of an undivided one-half interest in the 80 shares of stock. However, the appellate court found the trial court erred in ordering the corporation to afford the wife all the rights and privileges of a stockholder. Citing La. R.S. 12:601 and 12:75, the court explained that the wife, as co-owner in indivisión of the stock, was not entitled to any of the rights of a shareholder. The court noted that the wife’s remedy was to have the community partitioned.
In the present case, as previously stated, Ms. Schexnayder owned the 7,500 shares of stock in indivisión with Mr. Schexnayder by virtue of the donation of the stock to the community. However, like Pollock, her ownership interest in the stock did not give her autonomous control over the stock. See also In re Succession of Moss, 00-62 (La.App. 3 Cir. 6/21/00); 769 So.2d 614, 621, writ denied, 00-2834 (La. 12/8/00); 776 So.2d 462. Rather, Mr. Schexnayder, in whose name the stock certificates are issued and to whom the shares were transferred, retains exclusive management rights relating to the 7,500 shares, as well as the right to vote the shares under La. R.S. 12:75. As explained in Pollock, Ms. Schexnayder’s undivided one-half ownership interest in the shares by mere virtue of the shares having been donated to the community does not give her all the rights afforded to a shareholder, including the right to vote the shares.[3]
Accordingly, we find the district court correctly determined Ms. Schexnayder did not properly hold the office of President of YSS because she did not have the right to vote the 7,500 shares that were in Mr. Schexnayder’s name. |1ftAs such, Ms. Schexnayder’s vote, using the 7,500 shares to vote herself in as president, was invalid.

DECREE

For these reasons, we find the district court did not err in granting the writ quo warranto in favor of plaintiff, Wade Schex-nayder, and determining that Mr. Schex-nayder retained the right to vote the 7,500 shares of YSS stock. Accordingly, the trial court’s June 5, 2012 judgment is affirmed. Defendant, Melissa Schexnayder, is to bear the costs of this appeal.

AFFIRMED

. At some point, an additional 5,000 shares of stock were issued giving YSS a total of 15,000 shares of stock. It appears the extra 5,000 stocks were issued in 1992-equally to Yolande and Beatrice, and Carroll and Sharleen, who in turn donated the 5,000 shares to Mr. Schexnayder. Thus, in 1992, Yolande and Beatrice owned 5,000 shares, Carroll and Sharleen owned 5,000 shares, and Mr. Schex-nayder owned 5,000 shares. Of note, the original stock register book was lost or destroyed at some point after Hurricane Katrina and a new register book was not put in place until January 2010.

. The Articles of Incorporation for YSS are not in evidence, and neither party argues these articles contain different voting provisions than provided for in La. R.S. 12:75.

. The record indicates Mr. and Ms. Schexnay-der are currently in divorce proceedings. Upon termination of the community, the entire community may be partitioned, including the 7,500 shares of YSS stock.