# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-520

**JAMES B. "BLAKE" CURETON**

**VERSUS**

**JAMES H. "JIMMY" CURETON AND**

**CUSTOM METAL FABRICATORS, INC.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2020-274
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, D. Kent Savoie, and J. Larry Vidrine, Judges.


**VACATED IN PART; REVERSED IN PART; AFFIRMED IN PART.**

_____

\* Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**James A. Watson**
**3403 Patrick Street, Suite B**
**Lake Charles, LA 70605**
**(337) 474-4886**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **James H. "Jimmy" Cureton**
 **Custom Metal Fabricators, Inc.**

**Todd Samuels Clemons**
**Todd Clemons And Associates**
**1740 Ryan Street**
**Lake Charles, LA 70601**
**(337) 477-0000**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **James B. "Blake" Cureton**

**Timothy O'Dowd**
**Jared W. Shumaker**
**924 Hodges Street**
**Lake Charles, LA 70601**
**(337) 310-2304**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **James H. "Jimmy" Cureton**
 **Custom Metal Fabricators, Inc.**

**Richard Dale Moreno**
**PO Box 149**
**Lake Charles, LA 70602-0149**
**(337) 433-9535**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **James H. "Jimmy" Cureton**
 **Custom Metal Fabricators, Inc.**

**Philip A. Franco**
**Courtney C. Miller**
**Jeffrey E. Richardson**
**Kellen J. Mathews**
**Adams and Reese, LLP**
**701 Poydras Street, Suite 4500**
**New Orleans, LA 70139**
**(504) 581-3234**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **James B. "Blake" Cureton**

**EZELL, Judge.**

James H. "Jimmy" Cureton and Custom Metal Fabricators, Inc. appeal a trial court judgment in favor of James B. "Blake" Cureton, recognizing his 50% ownership interest in Custom Metal, a Louisiana partnership (the Partnership), him as a shareholder of 50% of the outstanding shares in Custom Metal Fabricators, Inc. (the Corporation), and his entitlement to all the rights that Louisiana law affords in connection with those ownership rights. For the reasons that follow, we vacate the judgment in part, reverse the judgment in part, and affirm the judgment in part.

## FACTS

Custom Metal Fabricators provides metal fabrication for refineries and businesses around the Lake Charles area. It also provides HVAC services. According to Jimmy, Custom Metal Fabricators started as a proprietorship in 1972, escalated to a partnership, and then became a corporation. Custom Metal Fabricators, Inc. was cofounded by Jimmy and Walter Lee in 1994, with each owning 50% of the shares in the corporation.

Around 2016, Jimmy and Walter talked about selling their interests in the companies. Blake expressed an interest in becoming a part owner. The minutes of the Corporation from September 14, 2016, indicate that there was discussion about the possibility of Blake purchasing Walter's interest in the Corporation. Blake was working with two banks to secure a loan. Walter was putting together a buy/sell agreement. In addition to Blake buying Walter out, there was also a discussion of Blake buying Jimmy out at a later date.

In 2017, Walter and Blake entered into a "SALES AGREEMENT." Walter agreed to sell his 1,000 shares of the total 2,000 shares of the Corporation and his 50% ownership in the Partnership. The agreement noted that the Corporation

"operates primarily a metal fabrication and air conditioning business" and the "Partnership owns real property, improvements, personal property, and provides support for the Corporate activities." The agreement was signed by Blake on June 7, 2017, and signed by Walter on June 8, 2017.

On November 26, 2019, Blake received a text message from Jimmy. The text message contained a picture of a letter written by Jimmy informing Blake that his employment with the Corporation was terminated. Blake was also informed that he was to return corporate property and that his pay, benefits, and charge accounts were cancelled.

On January 22, 2020, Blake filed a petition for writ of mandamus and writ of quo warranto. By way of mandamus, he demanded the right to inspect and copy the records of the Corporation and the Partnership. Pursuant to the quo warranto, Blake sought a declaration that Jimmy had no legal right to any office in the Corporation and therefore, had no right to terminate his employment.

A hearing was held on February 13, 2020. Following the hearing, the trial court rendered judgment in favor of Blake, recognizing his 50% ownership interest in Custom Metal, a Louisiana partnership, him as a shareholder of 50% of the outstanding shares in Custom Metal Fabricators, Inc., and his entitlement to all the rights that Louisiana law affords in connection with those ownership rights. The trial court also ordered Jimmy, the Corporation, and the Partnership to make the records of the Corporation and the Partnership available for inspection and copying. Additionally, the judgment ordered that Blake be reinstated in his employment with the business with full back pay and benefits, including health insurance. It was also ordered that Blake be allowed full access to the business facilities, and that he be reinstated as a signatory on all bank or financial institution accounts of

both businesses. Blake was awarded attorney fees and costs. Judgment was signed on February 24, 2020.

Jimmy and the Corporation filed a motion for suspensive appeal. The trial court denied the motion, finding that the judgment was not a final judgment and was, therefore, not subject to appeal. Jimmy and the Corporation sought supervisory review with this court. On March 19, 2020, this court granted the writ finding the trial court was without jurisdiction to determine whether Jimmy and the Corporation were entitled to an immediate appeal, citing *Morris v. State/Attorney General*, 05-508 (La.App. 3 Cir. 4/21/05), 909 So.2d 1. We reversed the trial court ruling and remanded the matter for further proceedings. *Cureton v. Cureton*, 20-188 (La.App. 3 Cir. 3/19/20) (unpublished opinion).

On remand, the trial court granted Jimmy's and the Corporation's motion for suspensive appeal. Blake filed a motion to dismiss the appeal on November 12, 2020. Blake argued that this court already determined that Jimmy and the Corporation did not have a right to appeal and the legislature did not provide the right to an appeal from an order making a writ of mandamus peremptory. In an unpublished opinion, this court denied the motion to dismiss the appeal, relying on more recent jurisprudence to find that the mandamus and quo warranto judgment was an appealable judgment. *Cureton v. Cureton*, 20-520 (La.App. 3 Cir. 12/16/20) (unpublished opinion).

On appeal, Defendants, Jimmy and the Corporation, assert several assignments of error. Jimmy claims that as director and president of the Corporation, he had authority to manage the business affairs of the Corporation, which included termination of Blake's employment. The Defendants also claim that the Partnership was never named as a defendant and service was never

perfected on the Partnership, so the trial court was without jurisdiction to render a judgment against the Partnership. Jimmy and the Corporation also +allege that Blake failed to prove that a contract of sale occurred regarding the corporate shares. Jimmy claims that La.R.S. 12:1-1602 does not authorize the court to order inspection of his personal records. Finally, the Defendants claim that the law does not provide for attorney fees, so the trial court was without authority to award attorney fees.

## THE PARTNERSHIP

We will first determine whether the trial court properly entered a judgment against the Partnership. Jimmy and the Corporation argue that the trial court did not have jurisdiction over the Partnership pursuant to La.Code Civ.P. art. 6 because the Partnership was never named as a defendant and there was no service of process on the Partnership. Furthermore, they argue the Partnership neither submitted to the jurisdiction of the court nor waived its objection.

Pursuant to La.Code Civ.P. art. 737, "[a] partnership has the procedural capacity to be sued in its partnership name." Citation and service of process are essential in all civil actions except summary and executory proceedings. La.Code Civ.P. art. 1201(A).

Pursuant to La.Code Civ.P. art. 2592(6), mandamus and quo warranto proceedings are summary proceedings. Therefore, citation and service of process were not necessary. However, the fact of the matter remains that the Partnership was not named as a defendant.

"A judgment rendered against a party who is not named as a defendant is absolutely void." *Wilson v. Champion Ins. Co.*, 607 So.2d 1079 (La.App. 3 Cir. 1992). Citing La.Code. Civ.P. art. 1841, which provides that "[a] judgment is the

4

determination of the rights of the parties in an action." The court in *In re Succession of Sims*, 15-1904 (La.App. 1 Cir. 12/28/16), 210 So.3d 394, held that a judgment could not declare rights as to a church that was not a party to the proceedings.

The only two named defendants in Blake's petition are Jimmy and the Corporation. The Partnership was never named. The fact that Jimmy was personally named as a defendant does not impute his status as a partner who was served on behalf of the Partnership, a distinct entity, when the Partnership was not named as a Defendant in the case. The trial court erred in ruling on an issue involving the Partnership when the Partnership was not a party to the action. Therefore, that part of the judgment is vacated which declared Blake to be a partner in the Partnership and further ordered Jimmy to produce the records of the Partnership for inspection.

## OWNERSHIP OF THE CORPORATION

In his petition for a writ of mandamus, Blake sought to examine the Corporation's records as a shareholder pursuant to La.R.S. 12:1-1602. Jimmy answered the petition and claimed that Blake did not own any shares in the Corporation. Jimmy argues that Blake failed to establish that an act of sale of 50% of the corporate shares occurred.

Pursuant to La.Code Civ.P. art. 3864, a writ of mandamus may be directed to a corporation or officer compelling the corporation to perform its duties as required by law or for the recognition of the rights of its members or shareholders. Louisiana Revised Statutes 12:1-1602(C) provides that a shareholder with at least 5% of the shares of any class of the issued shares has the right to inspect and copy corporate records "during regular business hours at a reasonable location specified

5

by the corporation" after reasonable notice. Furthermore, the demand must be made in good faith and for a proper purpose, with reasonable particularity, and connected with the shareholder's purpose. La.R.S. 12:1-1602(D).

A shareholder is entitled to a writ of mandamus when he establishes by a preponderance of the evidence that he was a shareholder of the corporation. *Bernard v. Louisiana Testing & Inspection, Inc.*, 19-575 (La.App. 3 Cir. 2/5/20), 290 So.3d 239, *writ denied*, 20-393 (La. 6/3/20), 296 So.3d 1069.

A trial court's findings of fact in reaching a determination to issue a writ of mandamus is subject to the manifest error standard of review. *Id.* (citing *Hess v. M & C Ins., Inc.*, 14-962 (La.App. 3 Cir. 2/11/15), 157 So.3d 1200). Findings of fact by a trial court may not be set aside by an appellate court unless they are manifestly erroneous or clearly wrong. *Id.* Findings of fact based on credibility determinations are entitled to great deference. *Id.*

"In resolving disputes of corporate ownership, it is well settled that a stock certificate is prima facie evidence of ownership, but is distinguished from actual ownership, which is to be determined from all the facts and circumstances of a case." *Guidry v. Savoie*, 15-809, 15-810, p. 9 (La.App. 5 Cir. 5/26/16), 194 So.3d 1184, 1190, *writ denied*, 16-1218 (La. 10/17/16), 207 So.3d 1064. "Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." La.Civ.Code art. 2456.

To establish his rights as a shareholder, Blake introduced into evidence a sales agreement in which Walter sold 50% of the shares in the Corporation to Blake. The sales agreement introduced into evidence was signed by Blake on June

6

7, 2017, before a notary and two witnesses. Walter signed the sales agreement on June 8, 2017, before a notary and two witnesses.

There is no doubt that all parties knew about Blake purchasing Walter's 50% shares in the Corporation. Minutes of a corporate meeting from September 14, 2016, were introduced into evidence by Jimmy and indicate that discussions were had concerning the purchase of Walter's interest in the Corporation by Blake. The minutes also state that Walter began to draw up the sales agreement. The minutes also state that Jimmy is going to meet with an attorney to discuss Blake's purchase of Walter's 50% of the Corporation and Jimmy's agreement to sell his own 50% interest in the Corporation at a later date.

Blake also introduced a previous email exchange between him and Jimmy from May 23, 2017, in which Jimmy listed the subject line as "Transfer of stock certificate." Jimmy asked Blake when he and Walter were getting together to transfer the ownership of Walter's one-half, and Blake replied "tomorrow." Jimmy replied "Good." Blake clearly established he purchased 50% of the Corporation.

Jimmy and the Corporation argue that Blake failed to present evidence that the conditions to complete the sale at issue were accomplished. They claim the contract of sale contains a suspensive condition that was never fulfilled so that the shares of the corporation were never transferred. The Defendants rely on the following provision in the sales agreement (italicized emphasis added):

A. **Conveyance of Corporation.** The Seller hereby agree[s] to sell, transfer and convey unto Buyer all of its respective right, title and interest in and to the capital stock of the Corporation and to otherwise sell, assign and transfer unto Buyer any other rights deemed to be necessary to accomplish the transfer of the securities of the Corporation. *In particular, Seller will deliver to the Buyer a waiver of the existing Buy-Sell agreement that has been executed between the existing owners requiring that the stock be first offered to the Corporation.*

Blake argues that the issue of a suspensive condition was never raised in the trial court so it was never preserved for appeal. We observe that an assertion that a suspensive condition has not occurred shall be alleged with specificity and with particularity. La.Code Civ.P. art. 857. However, when there is a failure to specifically plead a defense, but the opposing party fails to object to introduction of evidence bearing on the defense, the pleadings are construed to have been enlarged to include the defense. *Mark A. Gravel Props., LLC v. Eddie's BBQ, LLC*, 14-46 (La.App. 3 Cir. 5/7/14), 139 So.3d 653.

At trial, the following testimony regarding this particular provision was elicited during cross examination of Blake:

Q    Please refer to Article II of the agreement. On Page 2, it says, "Conveyance of corporation." It says, the first sentence, "The seller hereby agree[s]."

I guess I should have a "sic" in there, to sell transfer, and convey and to buy capital stock.

In particular, at the last sentence, "Seller will deliver to the buyer a waiver of the existing buy/sell agreement that has been executed between the existing owners requiring the stock to be offered first to the corporation. "Did you ever deliver such an item to Mr. Roach or anyone else:

A    I particularly did not deliver that, no, sir.

Blake later testified that he does not know if that exact document was delivered. Jimmy testified that he never signed a document waiving a right of first refusal to purchase shares of the stock.

We find that this issue was raised in the trial court. Jimmy and the Corporation specifically argue that the sale was not completed because there was a suspensive condition in the contract requiring that Walter deliver a waiver of a prior buy/sell agreement between the shareholders that the stock must first be

8

offered to the corporation, which was never fulfilled. We now consider whether Blake established his right to a writ of mandamus to examine the Corporation's records, including whether this condition affected the sale.

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art. 1906. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.

"A conditional obligation is one dependent on an uncertain event." La.Civ. Code art. 1767. "If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." *Id.* Contractual provisions should not be construed to be suspensive conditions when possible. *S. States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So.2d 198 (La.1987); *Burgess v. Shi Gang Zheng*, 17-665 (La.App. 4 Cir. 10/10/18), 257 So.3d 764. The party who asserts a suspensive condition as a defense bears the burden of establishing that there is a suspensive condition which has not been satisfied. *Abraham v. Sperandeo*, 423 So.2d 65 (La.App. 1 Cir. 1982); *Northshore Ins. Agency, Inc. v. Farris*, 634 So.2d 867 (La.App. 1 Cir. 1993).

In *Burgess*, 257 So.3d 764, the court considered a provision in an agreement to purchase property which required proof of funding for an all-cash sale. We noted that "there was no provision in the Agreement which conditioned the sale on [defendant's] ability to obtain financing." *Id.* at 774. This court went on to say that "[w]hile the Agreement did require [defendant] to supply 'proof of funds' within 48 hours, we find this to be merely a term of sale, and not a suspensive

condition as contemplated by our case law." *Id*. This court concluded that the term was not an uncertain event. *Id*.

In *Evangeline Parish School Board v. Energy Contracting Services, Inc.*, 617 So.2d 1259 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993), this court analyzed a contractual obligation to supply an equipment list to the school board and found the provision was merely to insure that no improper material, equipment, or modification would be used in the school. It did not mean that the contract would not be perfected until submission of the list. This court held that this provision was not a suspensive condition and could not be a basis for ruling the contract invalid.

Likewise, we do not find the Sales Agreement contained a suspensive condition. The sale of stock from Walter to Blake was not conditioned on Walter delivering a waiver of an existing buy/sell agreement between Walter and Jimmy requiring that the stock be first offered to the Corporation. This was merely a term of the sale. The sale was completed regardless of whether Blake received a waiver of a previous buy/sell agreement. The purchase price in the sales agreement was $2,500,000 for both the Corporation and the Partnership. Jimmy and the Corporation admitted in their answer to the petition that Walter was paid the sum of $2,500,000 with a payment financed through a loan from Whitney Bank and that Jimmy and Blake were co-guarantors under the loan. Also, Jimmy has introduced no evidence in the record of a previous buy/sell agreement between him and Walter concerning the purchase of the shares of stock.

Jimmy and the Corporation failed to establish that there was a suspensive condition in the sales agreement that was not completed. Therefore, we find that the trial court did not err in finding that sale of Walter's 50% in the Corporation to

Blake was a completed and valid sale. As such, Blake is entitled to inspect the Corporation's records pursuant to La.R.S. 12:1-1602.

## INSPECTION OF JIMMY'S PERSONAL RECORDS

Jimmy argues that the judgment's wording "Any and all personal records . . ." includes Jimmy's personal records and that La.R.S. 12:1-1602 does not allow inspection of a shareholder's or officer's personal records. We note that Blake agrees that the judgment was not intended to apply to Jimmy's personal records.

While we find that a reading of the judgment, as a whole, does not include Jimmy's personal records, for clarification, we find that Jimmy's personal records are not subject to inspection by Blake.

## JIMMY'S CORPORATE AUTHORITY

Jimmy argues that the trial court erred in finding that he did not have the authority to manage the affairs of the Corporation, which included firing Blake as an employee of the business. He argues that his authority to manage the corporation as a director and president continued until he was removed from office. Jimmy further argues that he had authority to manage the business even if there was a deadlock between the shareholders.

Blake argues that the issue of Jimmy's authority as director and president of the Corporation was not an issue before the court. It is Blake's position that the only true issue in the case is whether Blake is a shareholder in the Corporation and entitled to a writ of mandamus to compel production of records and recognition of his rights as a shareholder. He argues that Jimmy's suggestion that as president of the Corporation he could take any action he desired with no regard to the Corporation or its other 50% shareholder is severely misplaced.

11

In addition to requesting an inspection of the records in his petition, Blake also asked for a writ of quo warranto for a determination that Jimmy had no legal right to any office in the Corporation which allowed him to terminate Blake as an employee of the Corporation. The judgment specifically ordered that Blake's employment with Corporation be reinstated, and that he be granted full access to the Corporation's business facilities, in addition to Blake's reinstatement as a signatory on all bank accounts.

> Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation or limited liability company, or directing a corporation or limited liability company to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers.

La.Code Civ.P. art. 3901.

Comment (e) to La.Code Civ.P. art. 3901 explains the difference between a mandamus and quo warranto as follows: "Mandamus by definition, is an order directing performance. A writ of quo warranto, on the other hand, does not direct the defendant to perform or to cease from performing some act, but it orders the defendant to show by what authority he is acting." *See also Billiot v. Wiltz*, 16-1047 (La.App. 3 Cir. 5/24/17), 222 So.3d 964.

The relief a court can grant by a writ of quo warranto is limited. *Camillus Specialty Hospital, L.L.C. v. Riccio*, 13-1172 (La.App. 4 Cir. 1/30/14), 133 So.3d 287.

> When a court finds that a person is holding or claiming office (whether public or corporate) without authority, the judgment shall forbid him from doing so. *See* La. C.C.P. art. 3902. A court, in such a situation, may also declare who is entitled to the office and may direct that an election be held when necessary. *Id.* When a court finds that a *corporation* is exceeding its powers, the judgment shall prohibit it from doing so. *Id.* Given the narrow, limited nature of the writ, the provisions of Article 3902 set out the exclusive means of relief allowable on an application for a writ of quo warranto. *See*

12

*Plaquemines Parish Council v. Petrovich*, 629 So.2d 1322, 1326 (La.App. 4 Cir.1993); *Hyde v. Hyde*, 590 So.2d 727, 732 (La.App. 3 Cir.1991).

*Id.* at 291.

The burden is on the respondent in a quo warranto proceeding to show by what authority he or she claims or holds office in the corporation. *Billiot*, 222 So.3d 964; *Schexnayder v. Yolande Schexnayder & Son, Inc.*, 12-885 (La.App. 5 Cir. 5/23/13), 119 So.3d 624.

Pursuant to La.R.S. 12:1-840 "[a] corporation shall have a secretary and such other officers as described in its bylaws or appointed by the board of directors in a manner not inconsistent with any bylaws."

> In addition to the secretary's authority under R.S. 12:1-840, each officer has the authority and shall perform the functions set forth in the bylaws or, to the extent consistent with any bylaws, the authority and functions prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the authority and functions of other officers.

La.R.S. 12:1-841.

> An officer, when performing in such capacity, has the duty to act in all of the following manners:
> (1) In good faith.
> (2) With the care that a person in a like position would reasonably exercise under similar circumstances.
> (3) In a manner the officer reasonably believes to be in the best interests of the corporation.

La.R.S. 12:1-842(A).

Blake was aware that Jimmy was president of the Corporation before he bought the stock. Blake testified that once he was a shareholder, there were no meetings which changed any management of the corporation. Blake testified that when he went to work with the Corporation, his duties included establishing new

13

business contacts, helping management with day-to-day operations, and hiring and firing other employees when necessary.

Susan Shattuck, an accountant with the Corporation for ten years, testified that Jimmy was president and Walter was secretary and that those positions did not change. She also stated that both Blake and Jimmy were responsible for hiring employees but that Blake did most of the hiring and firing. Susan further testified that Jimmy acted as supervisor because he signs off on everything.

In issuing the quo warranto, the trial court stated, "[I]t has been proven, well-proven, that Mr. Jimmy acted beyond his authority." The trial court then stated that the president does not have authority to fire his 50% partner.

What we glean from the trial court's reasons is that it found that Jimmy was president, but that he exceeded his authority. Pursuant to La.Code Civ.P. art. 3901, a court is not authorized to grant a remedy by quo warranto relating to the individual exercise of alleged corporate authority. Therefore, the action for quo warranto as to Jimmy should have been dismissed because, in his capacity as president of the Corporation, a quo warranto is not the proper procedural mechanism to be used by a person asserting that an officer has exceeded his authority. *Schexnayder*, 119 So.3d 624.

The next issue we must address is whether the Corporation exceeded its authority in dismissing Blake. Jimmy testified that he wrote a letter on November 26, 2019, terminating Blake. He was of the opinion there was good cause to fire Blake.

> A corporation must have full and complete organization and existence as an entity, and in accordance with the law to which it owed its origin, before it could assume its franchise or enter into any kind of contract or transact any business. *Ahrens & Ott Mfg. Co. v. Caire*, 5 Teiss. 154, 1908 WL 1299, 5 Orleans App. 154

(La.App.Orleans 1908). If the parties comply with the corporate formalities, then, "once established, the separate nature of the corporate existence must be respected." *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 05–2364 (La.10/15/06), 939 So.2d 1206. A presumption of corporate existence arises once a certificate of incorporation is issued by the Secretary of State, and "other irregularities shown in matters of internal administration of its affairs cannot vitiate the legal existence of the corporation." *American Snuff Co. v. Stanton*, 13 La.App. 321, 127 So. 633 (La.App. 1st Cir.1930). But, "stockholders of stock corporation or members of nonstock corporation never become owners in common of corporate property." *Screwmen's Benev. Ass'n of Louisiana v. Monteleone*, 168 La. 664, 123 So. 116 (1929). Thus, "assets owned by a corporate entity are the property of that entity, and are not owned by the shareholders or partners." *McClanahan v. McClanahan*, 03–1178 (La.App. 5th Cir.2/23/04), 868 So.2d 844, *writ denied*, 04–1175 (La.9/3/04), 882 So.2d 609.

*Tedeton v. Tedeton*, 46,901, pp. 15-16 (La.App. 2 Cir. 2/8/12), 87 So.3d 914, 923.

Pursuant to La.R.S. 12:1-302(11), a corporation has the power of appointment of employees.

The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. *Cf. Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 281 (Iowa 1995) ("[T]he doctrine of employment at-will is merely a gap-filler, a judicially created presumption utilized when parties to an employment contract are silent as to duration."). This default rule is contained in LSA–C.C. art. 2747.7

Under LSA–C.C. art. 2747, generally, "an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge." *See Williams v. Delta Haven, Inc.*, 416 So.2d 637 (La.App. 2nd Cir.1982). However, this right is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee. For instance, an employee cannot be terminated because of his race, sex, or religious beliefs. Moreover, various state statutes prevent employers from discharging an employee for exercising certain statutory rights, such as the right to present workers' compensation claims. Aside from the federal and state statutory exceptions, there are no "[b]road policy considerations creating exceptions to employment at will and affecting relations

between employer and employee." *See Gil v. Metal Service Corp.*, 412 So.2d 706, 708 (La.App. 4th Cir. 1982).

*Quebedeaux v. Dow Chem. Co.*, 01-2297, pp 4-6 (La. 6/21/02), 820 So.2d 542, 545-46 (alterations in original)(footnotes omitted).

"[T]he reasons for termination need not be accurate, fair or reasonable. . . . In fact, there need be no reason at all for termination." *Clark v. Acco Sys., Inc.*, 39,532, p. 4 (La.App. 2 Cir. 4/6/05), 899 So.2d 783, 786.

There is no evidence that Blake had an employment contract with the Corporation. As such, he was subject to termination at the will of the Corporation. Therefore, the Corporation did not exceed its corporate authority in terminating Blake and discontinuing all benefits he was entitled to as an employee. The trial court erred in issuing a quo warranto prohibiting the Corporation from terminating Blake's employment and all rights that Blake enjoyed as an employee of the Corporation.

## ATTORNEY FEES

Jimmy and the Corporation claim that the trial court erred in awarding attorney fees to Blake as there is no legal basis for this award. In asking for attorney fees, Blake relied upon La.R.S. 12:1-1604(C), which provides:

> If the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's expenses incurred to obtain the order unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded.

"As a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract." *Langley v. Petro Star Corp. of La.*, 01-198, p. 3 (La. 6/29/01), 792 So.2d 721, 723; *Rain CII Carbon, LLC v.*

16

*Turner Indus. Group, LLC*, 19-403 (La.App 3 Cir. 3/18/20), 297 So.3d 797, *writ denied*, 20-774 (La. 10/20/20), 303 So.3d 319.

Louisiana Revised Statues 12:1-1604(C) provides for an award of "expenses" a shareholder incurs in asserting his right to inspect corporate records. Attorney fees are not mentioned. Blake cites several cases in which the court awarded attorney fees as part of "costs and expenses" a shareholder may recover. *Guidry v. Gulf Coast Oil Tubing*, 09-621 (La.App. 3 Cir. 12/9/09), 24 So.3d 1019; *Naquin v. Air Engineered Sys. & Servs., Inc.*, 423 So.2d 713 (La.App. 3 Cir. 1982), *writ denied*, 429 So.2d 156 (La.1983); *Ales v. Sewell*, 00-17, 00-18 (La.App. 4 Cir. 10/17/01), 800 So.2d 36.

All these cases relied on previous law found in La.R.S. 12:172(D) (emphasis added), which read:

> Any corporation, or any officer or agent thereof, which or who shall in bad faith refuse to permit the exercise of inspection rights as defined in, and limited by, R.S. 12:103, shall be liable to the shareholder or shareholders seeking to exercise such rights to the **extent of the costs and expenses of any proceeding necessary to enforce such inspection rights**, **and for any other damages actually sustained** by such shareholder or shareholders.

"[T]he legislature is presumed to know the law. . . . [and] 'is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter.'" *Kocher v. Truth in Politics, Inc.*, 20-1153, p. 2 (La. 12/22/20), 307 So.3d 182, 184.

When the legislature enacted La.R.S. 12:1-1604(C) as part of the Business Corporation Act by Acts 2014, No. 328, it is presumed to know that the previous law, La.R.S. 12:172(D), allowing for recovery by a shareholder of expenses in seeking to examine corporate records, included "costs," "expenses," and "any other damages." The legislature was also aware of case law interpreting this provision

17

and providing that these terms together encompassed attorney fees. The legislature specifically left out "costs" and "any other damages" in enacting La.R.S. 12:1-1604(C).

We, therefore, find that the legislature did not intend for a shareholder to recover attorney fees when seeking inspection rights of corporate records. The legislature could have specifically provided for attorney fees in the new statute but failed to do so. It was error for the trial court to award Blake attorney fees.

For the reasons set forth in this opinion, we vacate the judgment insofar as it declared Blake to be a partner in the Partnership and further ordered Jimmy to produce the records of the Partnership for inspection. We do find that a sales agreement was completed transferring Walter Lee's 50% interest in the Corporation to Blake and affirm the judgment recognizing Blake as 50% owner in the Corporation and Blake's right of inspection the Corporation's records. We also find that the judgment does not include a right of inspection of Jimmy's personal records. We reverse, recall, and vacate the judgment granting the writ of quo warranto finding Jimmy was not president and directing him to reinstate Blake to employment with all its benefits. We also reverse, recall, and vacate the writ of quo warranto directing the Corporation to reinstate Blake to employment with all its benefits. The award of attorney fees is reversed.

**VACATED IN PART; REVERSED IN PART; AFFIRMED IN PART.**